**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| ANNA KYRIAKOUDIS )<br>3121 Chain Bridge Road, N.W. )<br>Washington, DC 20016 )<br>  )<br>   and   )<br>  )<br>E. ANDRÉ CARTER )<br>2941 Brandywine Street, N.W. )<br>Washington, DC 20008 )<br>  )<br>   Plaintiffs,   )<br>  )<br>   v.   )<br>  )<br>MICHAEL H. LESTER )<br>7338 Wayfarer Drive )<br>Fairfax Station, VA   22039 )<br>  )<br>   and   )<br>  )<br>BEAR, BUG & BIZ, LLC )<br>7338 Wayfarer Drive )<br>Fairfax Station, VA   22039 )<br>  )<br>   Serve:  Registered Agent: )<br>   J.R. Hunter, Inc. )<br>   12430 Boxwood Farms Drive )<br>   Catharpin, VA   20143 )<br>  )<br>   Defendants   )<br> ) | Case No. 1:18-cv-00369-TSE |

**AMENDED COMPLAINT**

Anna Kyriakoudis and E. André Carter, for their complaint to the Court, state as follows:

**PARTIES**

1.  Plaintiff Anna Kyriakoudis (hereinafter, "**Ms. Kyriakoudis**") is an adult resident of the District of Columbia at the address set forth in the caption above.

1

2. Plaintiff E. André Carter (hereinafter, "**Mr. Carter**") is an adult resident of the District of Columbia at the address set forth in the caption above.

3. Defendant Michael H. Lester (hereinafter, "**Mr. Lester**") is an adult resident of the Commonwealth of Virginia at the address set forth in the caption above.

4. Defendant Bear Bug & Biz, LLC ("**BB&B**" or the "**Company**") is a Virginia limited liability company with its principal office at the address set forth in the caption above.

## JURISDICTION

5. Jurisdiction is vested in this Court by virtue of the Securities Act of 1933, as amended, 15 U.S.C. §§ 77a – 77aa; the Securities Exchange Act of 1934, as amended, 15 U.S.C. §§ 78a – 78kk; and 28 U.S.C. § 1367.

## FACTS COMMON TO ALL COUNTS

6. For many years, Ms. Kyriakoudis and Mr. Carter were in the real estate business together as partners. In connection therewith, they formed various single purpose limited liability companies ("**LLCs**"), among which were four LLCs (together, "**DC LLCs**") to acquire and own four commercial properties (the "**Properties**") in Washington, DC that are among the subjects of this Complaint. The four DC LLCs and their respective Properties were as follows:

| **LLC** | **PROPERTY** |
|---|---|
| First Base, LLC (hereinafter, "**First Base**"), a District of Columbia limited liability company | 1543, 1545 & 1547 First Street, SW, Washington, DC, 20024 comprising three contiguous parcels |
| Meridian 14, LLC (hereinafter, "**Meridian**"), a District of Columbia limited liability company | 1400 - 1402 Meridian Place, NW, Washington, DC, 20010 comprising two contiguous parcels |
| Pad L78, LLC (hereinafter, "**Pad L78**"), a District of Columbia limited liability company | 220 L Street, NE, Washington, DC 20002 |
| Vermont 9, LLC (hereinafter, "**Vermont**"), a District of Columbia limited liability company | 2106 - 08 Vermont Avenue, NW, Washington, DC 20001, comprising two contiguous parcels |

7. Beginning in 2008, Ms. Kyriakoudis and Mr. Carter were involved in development of a site for a mixed-use commercial project at 1109 - 1115 Congress Street, NE, Washington, DC 20002 ("**Congress Street**") which was adjacent to the parcel at their 220 L Street, N.E., Washington, DC 20002 property ("**L Street**"). When the Congress Street project was approximately 90 days from completion, the Plaintiffs' bank suddenly changed its lending practices which resulted in a complete halt to the Congress Street project.

8. As a result, Plaintiffs ultimately lost the Congress Street property to foreclosure.

9. Following the Congress Street foreclosure, in early 2013, Mr. Lester, who had previously invested in property with Plaintiffs, offered in a meeting with Plaintiffs, to provide financial support to Plaintiffs in order to restructure their real estate business and to capitalize on the value of the Congress Street property.

10. Mr. Lester agreed to join in business with the Plaintiffs, using for that purpose BB&B, a limited liability company that he had formed in or about August, 2012. Mr. Lester was the sole Member of BB&B until Ms. Kyriakoudis and Mr. Carter were admitted as Members in September, 2013, pursuant to a certain Operating Agreement (the **"Operating Agreement"**) then adopted.

11. The purpose of BB&B was to carry on business, investment and development activities in order to generate a profit by operating the Properties including collecting rent from tenants, leasing unoccupied spaces, making repairs, paying operating expenses and taxes and paying debt service payments.

12. On June 15, 2013, the DC LLCs entered into a certain Real Estate Purchase Agreement ("**Purchase Agreement**") with Mr. Lester (or his successors or assigns) pursuant to which the DC LLCs agreed to sell, and Mr. Lester agreed to purchase, the Properties for

$13,350,000.00, which was the appraised value of the Properties at that time.

13. A true and correct copy of the Purchase Agreement is attached hereto as **Exhibit 1**.

14. The Purchase Agreement was amended on September 11, 2013 by a written Amendment to Real Estate Purchase Agreement ("**Amendment**", and together with the Purchase Agreement, the "**Amended Purchase Agreement**"), signed by the Plaintiffs and Mr. Lester.

15. A true and correct copy of the Amendment is attached hereto as **Exhibit 2**.

16. The Amended Purchase Agreement entered into on September 11, 2013 restructured the planned transaction (the "**Transaction**") among the parties. In addition to acquiring the Properties, Mr. Lester contracted to acquire from the Plaintiffs their membership interests in the DC LLCs. In exchange, Plaintiffs were to receive a 15% membership interest in BB&B.

17. At the time of the Transaction, prior to the transfer the Properties were encumbered by deeds of trust securing promissory notes with balances that aggregated $7,350,947.55, comprising approximately 55% of the appraised value of the Properties.

18. The Transaction contemplated by the Amended Purchase Agreement closed on or about September 20, 2013 at the offices of Eisen and Rome, P.C. at One Thomas Circle, N.W., Washington, DC 20005.At that closing, the Plaintiffs and Mr. Lester were present, as was Mr. Lester's attorney.

19. The Transaction was financed in part by a loan from Premier Bank (hereinafter, "**Premier**").

20. The Properties contributed by the Plaintiffs secured the Premier loan, which, after paying the debt on the Properties, costs of the Transaction and certain obligations of the Plaintiffs, yielded approximately $3.4 million, part of which was used to repay an earnest money loan

4

procured by Mr. Lester, with the remainder intended to fund the operations of BB&B.

21. As a condition of making its loan, Premier required that Mr. Lester hold at least an 85% membership interest in BB&B. Accordingly, and pursuant to the Amended Purchase Agreement as well as the Operating Agreement, both Ms. Kyriakoudis and Mr. Carter each became owners of 7.5% membership interests in the Company (Mr. Lester, Ms. Kyriakoudis and Mr. Carter are each hereinafter individually referred to as a "**Member,**" or collectively, as "**Members**").

22. As Members of the Company, Mr. Lester, Ms. Kyriakoudis and Mr. Carter were to share in the Company's profits and losses in accordance with the provisions of the Operating Agreement.

23. Mr. Lester was appointed Managing Member of the Company. As Managing Member of the Company, Mr. Lester undertook the responsibility and duty for managing all of the affairs of the Company, pursuant to Section 6.01 of the Operating Agreement, which says:

> 6.01 **Power and Authority of the Board of Managers**.
> Except as otherwise expressly limited in this Agreement, the Board of Managers will (i) exercise complete and exclusive control of the management of the Company's Business and affairs and (ii) have the exclusive right, power and authority on behalf of the Company, and in its name, to exercise all of the rights, powers and authorities of the Company under the Act. Each Manager will discharge his or her duties as a manager in accordance with the standards of conduct set forth in Section 13.1-1024.1 of the Act and be a fiduciary with respect to the Company.

24. Pursuant to Section 13.1-1024.1 of the Virginia Limited Liability Company Act, Mr. Lester was required to discharge his duties as "manager in accordance with the manager's good faith business judgment of the best interests of the limited liability company."

25. As Manager, Mr. Lester was required under § 6.08 of the Operating Agreement to "devote such time, effort and skill in the management of the Company's business affairs as each

deems necessary and proper for the Company's welfare and success."

26. Upon closing of the Transaction, Mr. Lester took control of the Properties and from the date of the Transaction and ever since, Mr. Lester has maintained sole control over the Properties.

27. As a result, although they had invested substantially in the Properties, Mr. Carter and Ms. Kyriakoudis have been wholly reliant on Mr. Lester's actions to protect their investment in the properties and to generate profit from the Properties.

28. Mr. Lester breached his duty to exercise good faith business judgment in the best interests of the Company by failing to develop the Properties to generate rental income—as was the purpose of the Company. Rather, Mr. Lester operated the Company in his self interest. As set forth below, Mr. Lester engaged in a pattern and practice of engaging in and structuring transactions involving Company properties and assets which benefited him to the detriment of Plaintiffs and the Company's best interest.

29. In October 2013, shortly after the Transaction closed and the titles to the Properties were transferred to BBB, Mr. Lester acquired Congress Street at the foreclosure auction of that property.

30. Mr. Lester's acquisition of Congress Street was paid for in part using funds from the Company.

31. When Plaintiffs introduced Mr. Lester to the Congress Street property in 2012, he promised them that if he acquired it, Plaintiffs would share in its ownership. However, when Mr. Lester acquired Congress Street property, he titled it to Congress L.L.C., a District of Columbia limited liability company that, on information and belief, is wholly owned by Mr. Lester.

32. After obtaining control of the Properties, Mr. Lester failed to properly manage them. Although Plaintiffs had years of experience operating the Properties, including collecting rents from delinquent tenants, after the Transaction Mr. Lester prohibited Plaintiffs from contacting tenants at the Properties.

33. At the time of the Transaction the Properties were fully leased. Since the Transaction, the Properties have experienced vacancies up to 100% of available units.

34. Plaintiff Anna Kyriakoudis is a licensed real estate broker in the District of Columbia.

35. Ms. Kyriakoudis offered to Mr. Lester to market without commission vacant portions of the Properties to prospective tenants.

36. Mr. Lester generally refused to permit Ms. Kyriakoudis to market the Properties.

37. Mr. Lester refused to take reasonable steps expected of a manager exercising good faith business judgment to lease the vacant space in the Properties.

38. As a result, substantial vacancies have persisted to this day, contributing to what Mr. Lester has described as the Company's severe financial distress.

39. Real estate taxes on the Properties have not been timely paid. Vacancy and lack of maintenance have resulted in a "blighted" designation on the First Street properties resulting in an increase of more than 100% in their real estate tax rate.

40. According to Mr. Lester's recent representations, the Properties are operating at a loss because they are not generating sufficient income to pay all of their expenses and debt service.

41. A manager exercising good faith business judgment in the best interests of the Company would, at a minimum, have taken steps to lease the vacant space in the Properties, collect the rents, and otherwise manage the Properties to maximize gain to the Company.

42. Mr. Lester has represented to Plaintiffs on multiple occasions that the loan from Premier is and has been in default, but has failed and refused to turn over records substantiating that representation.

43. Under section 14.02(a) of the Company's Operating Agreement, Mr. Lester is required to "keep or cause to be kept (i) complete and accurate books of account in accordance with normally accepted tax accounting principles and methods consistently applied, in which will be entered fully and accurately each and every transaction of the Company."

44. As Managing Member of the Company, Mr. Lester is required to annually file all necessary tax returns for the Company, including but not limited to annual Internal Revenue Service income tax Forms 1065 reporting on profits, losses and other financial attributes of the Company.

45. As Managing Member of the Company, Mr. Lester is required to annually prepare and distribute federal Forms K-1 (the "**K-1s**") to all members of the Company, showing, *inter alia*, their distributive share of the profit or loss of the Company and the account of their capital investment ("**Capital Account**") with the Company.

46. Under federal law, Mr. Lester is required to send Plaintiffs the K-1s each year which report the financial results of the Company's activities for the prior year.

47. Despite repeated requests by Plaintiffs, until July 2017, Mr. Lester failed to send Plaintiffs copies of the Company's tax returns and K-1s.

48. In July 2017, Mr. Lester finally sent Plaintiffs unsigned, undated versions of what he represented were federal income tax Forms 1065 for the Company for calendar years 2013, 2014 and 2015 (the "Tax Returns").

49. Mr. Lester represented to Ms. Kyriakoudis that he personally prepared all of the Company's tax returns, despite previously representing that he would retain a certified public accountant to prepare those returns

50. Included with the Tax Returns were K-1s purporting to show the distributive share and Capital Accounts of the Company's Members.

51. The Tax Returns show that Mr. Lester improperly named the DC LLCs, rather than Ms. Kyriakoudis and Mr. Carter as required by the Amended Purchase Agreement and the Operating Agreement, as his co-Members of the Company.

52. The K-1s inaccurately report the capital accounts of the respective Members, overstating that of Mr. Lester and omitting any capital accounts for Mr. Carter and Ms. Kyriakoudis, in violation of the Operating Agreement.

53. Had Plaintiffs received timely, accurate K-1s from the Company, the losses reflected on such K-1s could have materially benefitted Plaintiffs by reducing their federal and District of Columbia income tax liabilities for the respective years.

54. The Company's Tax Return for 2013 shows a year-end Capital Account for Mr. Lester of $3,533,142.

55. The Company's 2013 Tax Return also shows Capital Accounts for the DC LLCs, with each attributed a Capital Account of $249,585.00.

56. The foregoing Capital Account rendering is hopelessly wrong. First, as recited above and reflected in the Operating Agreement, the DC LLCs are not Members of the Company.

57. Second, Ms. Kyriakoudis and Mr. Carter, the *true* Members of the Company with Mr. Lester, should each have had Capital Accounts at the time of the Transaction in the amount of $2,538,328.00 as a result of their contributions to the Company.

9

58. Mr. Lester's true Capital Account was $706,191.00 at the conclusion of the Transaction.

59. Restated, the capital of the Company after the Transaction should have been allocated as follows:

> Michael H. Lester:   $   706,191.00
>
> Anna Kyriakoudis:   $ 2,538,328.00
>
> E. André Carter:   $ 2,538,328.00

60. On or about February 2016, Mr. Lester entered into a Purchase and Sale Agreement (the "**L Street PSA**") for the sale of one of the Properties, namely, 220 L Street, NE, Washington, DC 20002 ("**L Street**") for $2,240,000.00.

61. Contemporaneous with the sale of L Street, Mr. Lester contracted to sell Congress Street for $4,760,000.

62. Mr. Lester gave no notice to Plaintiffs of the proposed sale of the L Street or Congress Street Properties prior to entering into his agreement to sell those Properties.

63. Plaintiff Anna Kyriakoudis discovered the proposed sales of L Street and Congress Street only by happenstance, in reviewing records of the District of Columbia Board of Zoning Appeals.

64. Since the contracts for sale by Mr. Lester of the L Street and Congress Street properties were made at the same time, were for adjacent parcels, were to the same purchaser, and specifically refer to each other, Plaintiffs assert that the sales of the L Street property and the Congress Street property were part of a single transaction, the combined price of which was $7,000,000.00.

65. The L Street property is located in a section of the District of Columbia in which real estate prices have been rapidly increasing for several years. The $2,240,000.00 sale price allocated to the L Street property grossly undervalued the L Street property, which had appraised for $3,500,000 as of June 12, 2013. It has appreciated substantially in the more than four years since its June 12, 2013 appraisal.

66. On July 5, 2017, Plaintiffs demanded the opportunity to inspect and copy records of the Company. To date, Mr. Lester has produced only limited portions of the records that Plaintiffs have demanded, consisting of the aforementioned Tax Returns and Purchase and Sale Agreements for the L Street and Congress Street properties.

67. Defendant Lester has now *closed* on the sale of L Street and Congress properties, with no prior notice to the Plaintiffs. Copies of the deeds, recorded January 3, 2018, for sale of the L Street and Congress properties are attached hereto as **Exhibit 3a** and **Exhibit 3b**, respectively.

68. According to public records, the total sales price for the Congress and L Street properties was $7,130,000 (the "**Total Sales Price**").

69. That Total Sales Price represented an *increase* of $170,000.00 compared to the prices for those properties in the contracts that Mr. Lester had shown to the Plaintiffs, yet the portion allocated to the L Street property *decreased*, from the already-inadequate $2,400,000.00 as in the original contract to $2,325,000.00. By allocating a disproportionate share of the sales proceeds to Congress Street which he owned solely, Mr. Lester acted in self interest and in violation of his fiduciary duty to the Company and the Plaintiffs as Members.

70. Paragraph 5.01(c) of the Operating Agreement provides that upon sale of any of the Company's properties, proceeds must first be distributed proportionally to all Members on the

11

basis of their relative Capital Accounts before any funds may be distributed for earned compensation or on a percentage basis.  The Plaintiffs carry a high positive balance in their respective Capital Accounts but received no such distributions after any sale.

71. Mr. Lester and BBB made no distributions or other payments to the Plaintiffs following the sale of the L Street and Congress Street properties.

72. On information and belief, based on telephone conversations that Defendant Lester had with Plaintiff Kyriakoudis, a commission of $140,000.00 was paid from the proceeds of sale of the L Street and Congress properties to Jeffrey T. Neal, a real estate broker who did not procure the sale of the L Street and/or Congress Street properties.

73. On information and belief, the Company has interests in other properties to which the Tax Returns referred.  Defendant has refused to supply any other information about those properties.

74.  For example, in December 2013 Mr. Lester used funds of the Company to purchase property for Weems Lane LLC.(the "**Weems Property**")   The Weems Property was the business address and one location of Mr. Lester's business known as CashPoint.   In furtherance of his pattern and practice of operating the Company for his own interest and contrary to his fiduciary duty to the Company and the other Members, Mr. Lester purchased the Weems Property, a property he formerly leased for the benefit of his business.

75. Plaintiffs have recently learned from public records—attached hereto as **Exhibit 4**—of the sale in January 2018 of another of the Properties, 2106–08 Vermont Avenue, N.W., Washington, DC 20001 ("**Vermont Avenue**").   No notice whatsoever of that sale was provided to Plaintiffs.

76. Mr. Lester and BB&B made no distributions or other payments to Plaintiffs from the sale of Vermont Avenue.

77. On information and belief, based on telephone conversations that Defendant Lester had with Plaintiff Kyriakoudis, Defendant Lester is now incapacitated, having suffered serious burns as the result of falling asleep while smoking in bed.

78. Defendant Lester represented to Plaintiff Kyriakoudis that he, Michael Lester, was so badly impaired by his injuries that he was unable to attend to daily affairs, including the normal operations of the Company.

## COUNT ONE

### (BREACH OF THE SECURITIES ACT OF 1933 AND THE SECURITIES EXCHANGE ACT OF 1934)

79. The allegations of Paragraphs 1 through 79 of the Complaint are incorporated herein by reference.

80. The Members invested in the Company as a common enterprise, expecting profits.

81. The Company was operated exclusively by Mr. Lester, on whose sole efforts the Members accordingly relied to achieve a profit.

82. As such, the Plaintiffs' investments in the Company constituted a security, governed by the Securities Act of 1933, as amended, 15 U.S.C. §§ 77a – 77aa, and the Securities Exchange Act of 1934, as amended, 15 U.S.C. §§ 78a – 78kk (collectively, the "**Securities Acts**").

83. Plaintiffs were induced to invest in the Company by Mr. Lester's September 11, 2013 execution of the Amended Purchase Agreement and September 20, 2013 execution of the Operating Agreement, both of which showed Plaintiffs as Members of the Company.

84. Despite repeated requests since the formation of the Company, Mr. Lester did not produce any Company Tax Returns or Forms K-1 to Plaintiffs until July 2017. Not until Mr. Lester produced the Company Tax Returns and Forms K-1 did the Plaintiffs have reason to know that Mr. Lester was not treating the Plaintiffs as Members of the Company.

85. As confirmed by a string of recent communications, Mr. Lester never intended to treat Plaintiffs as Members of the Company. Mr. Lester's execution on September 11, 2013 of the Amended Purchase Agreement and his execution on September 20, 2013 of the Operating Agreement constituted fraud in the inducement.

86. By text message that Ms. Kyriadoudis sent to Mr. Lester on October 24, 2017 at or slightly after 1 p.m., and then again by text message on October 27, 2017 at 6:06 p.m., Ms. Kyriakoudis requested Mr. Lester acknowledge Plaintiffs' Membership Interests in the Company, and to correct the Tax Returns and Forms K-1 accordingly.

87. Mr. Lester repudiated Ms. Kyriakoudis's requests by texts that he sent on October 29, 2017 at 8:21 p.m. and November 3, 2017 at 11:33 a.m., referring her to his prior request on June 24, 2014 through his then counsel. In the June 24, 2014 communication to which Mr. Lester referred, he demanded a repudiation of the structure of the Transaction as reflected in the Operating Agreement and the Amended Purchase Agreement.

88. In the June 24, 2014 request made by Mr. Lester through his then counsel, Mr. Lester demanded that Plaintiffs sign a different version of the operating agreement that would have changed the relationship of the Parties to conform to Mr. Lester's actions and representations. As set forth above, the Plaintiffs have now learned that Mr. Lester intended from the beginning to dishonor the arrangement set forth in the Amended Purchase Agreement and in the Operating Agreement and instead to supplant it with one that followed the structure he used on the Tax

Returns and Forms K-1 that he prepared.

89. The Plaintiffs never intended or agreed to a change the relationship to which all Parties originally agreed, so the Plaintiffs did not sign the document Mr. Lester proposed in June 2014.  Not until Plaintiffs received the Tax Returns, Forms K-1 and text messages of October 29, 2017 and November 3, 2017 referred to above did it become apparent that Mr. Lester was misusing the sweeping and unilateral control of the Company granted by his position of Managing Member to attempt to unilaterally impose the same changes on the Parties' relationship to which they refused to agree in June 2014.

90. Mr. Lester fraudulently induced Ms. Kyriakoudis and Mr. Carter to enter into the Transaction by signing the Amended Purchase Agreement and the Operating Agreement—on both of which documents the Plaintiffs fully and reasonably relied—and by otherwise promising to provide financial support to enable Plaintiffs to complete the Congress Street and other projects.

91. As a consequence of Mr. Lester's failure to abide by the terms of the Amended Purchase Agreement and the Operating Agreement, Plaintiffs have been prevented from claiming their rightful share of Company losses on their personal tax returns; have been shut out of Company governance; have been deprived of information about the Company's operations and finances; have been excluded from information about any non-arm's length transactions; and have been excluded from their rightful share of Company distributions upon the sale of the L Street and Vermont Avenue Properties, plus any distributions that they should have received on account of the sale of the Congress Street Property.

**WHEREFORE**, the premises considered, Plaintiffs respectfully request this Court to enter an Order finding Defendant Michael Lester in violation of the Securities Act of 1933, as amended, 15 U.S.C. §§ 77a – 77aa, and the Securities Exchange Act of 1934, as amended,   15 U.S.C. §§ 78a

– 78kk and granting them damages resulting therefrom.

## COUNT TWO

### (ENFORCEMENT OF CONTRACTUAL AND STATUTORY INSPECTION RIGHTS)

92. The allegations contained in paragraphs 1 through 92 are incorporated herein by this reference.

93. Under both the Operating Agreement and Va. Code Ann. § 13.1-1028, Plaintiffs have the right to review, inspect, and receive copies of certain books and records of the Company.

94. Pursuant to a letter dated July 5, 2017, attached hereto as **Exhibit 4**, Plaintiffs made a proper demand on Mr. Lester for the opportunity to review, inspect, and obtain copies of such books and records.

95. Mr. Lester has since provided only a small subset of the requested books and records. Specifically, Mr. Lester has only provided copies of the Tax Returns and the Purchase and Sale Agreement for the L Street and Congress Street properties.

**WHEREFORE**, Plaintiffs Anna Kyriakoudis and André Carter hereby respectfully request an Order compelling Defendants' compliance with Defendants' obligations under the Operating Agreement and Va. Code Ann. § 13.1-1028 to produce all of the documents and materials requested in the letter dated July 5, 2017 (**Exhibit 4**), awarding Plaintiffs their reasonable attorneys' fees and expenses pursuant to § 17.13 of the Operating Agreement, and providing such other relief that the Court deems fair and appropriate under the circumstances.

## COUNT THREE

### (JUDICIAL EXPULSION OF MR. LESTER AS MANAGER AND MEMBER)

96. The allegations contained in paragraphs 1 through 96 are incorporated herein by this reference.

97. As set forth above, Mr. Lester has engaged in wrongful conduct that has adversely and materially affected the business of the Company.

98. As set forth above, Mr. Lester has willfully and persistently committed material breaches of the Operating Agreement. Such breaches include, *inter alia*: (1) failing to recognize that Plaintiffs, not the DC LLCs, are Members of the Company, even after a specific demand to do so was made by Plaintiffs; (2) failing to properly calculate the Capital Account balances of the Members, and in particular, overstating his own Capital Account to the detriment of Plaintiffs; (3) failing to act in conformance with the fiduciary duty imposed on the managing member pursuant to section 6.01 of the Operating Agreement; (4) failing to devote the required time, effort and skill in the management of the business affairs required by section 6.08 of the Operating Agreement; and, (5) failing to produce for inspection and copying the books and records requested by Plaintiffs.

99. As set forth above, Mr. Lester has engaged in in wrongful conduct that adversely and materially affected the business of the Company.

100. As set forth above, Mr. Lester has engaged in conduct that makes it not reasonably practicable to carry on the business of the Company with the involvement of Mr. Lester.

101. Notwithstanding Plaintiffs' reasonable request, Mr. Lester refused to remedy his wrongful conduct.

**WHEREFORE**, Plaintiffs respectfully request an Order expelling Mr. Lester as a Member of the Company pursuant to Va. Code § 13.1-1040.1.5(a) and (b) ; terminating his position as the Manager of the Company; and providing such other relief that the Court deems fair and appropriate under the circumstances.

Dated:   June 8, 2018                                    Respectfully submitted,

                                                                          ANNA KYRIAKOUDIS
                                                                          E. ANDRÉ CARTER
                                                                          By Counsel


                                                                             /s/
                                          Nicholas Hantzes, VSB No. 23967
                                          Michael Hall, VSB No. 85481
                                          HANTZES & ASSOCIATES
                                          1749 Old Meadow Road, Suite 308
                                          McLean, VA 22102
                                          Tel: (703) 378-5000
                                          nhantzes@hantzeslaw.com
                                          mhall@hantzeslaw.com
                                          *Counsel for Plaintiff*

## JURY DEMAND

Plaintiff demands a jury on all issues to which he is entitled to a jury.


                                          Nicholas Hantzes, VSB No. 23967
                                          Michael Hall, VSB No. 85481
                                          HANTZES & ASSOCIATES
                                          1749 Old Meadow Road, Suite 308
                                          McLean, Virginia 22102
                                          Tel: (703) 378-5000
                                          Fax: (703) 448-4434
                                          nhantzes@hantzeslaw.com
                                          mhall@hantzeslaw.com
                                          *Counsel for Plaintiff*